Núñez, Plaintiff and Appellant, v. Lacot, Defendant and Appellee.

Appeal from the District Court of Ponce in an Action of Filiation and Inheritance.

No. 2794.—Decided June 19, 1923.

Filiation — Legitimacy — Presumption — Evidence. — In this case the mother alleged that the presumption of the legitimacy of her daughter who was born within 300 days after the dissolution of the marriage should not be indulged. The evidence of the impossibility of intercourse to which section 181 of the Civil Code refers tended to show that the spouses lived apart since the pendency of the action for divorce, the wife living in Peñuelas and the husband in Ponce. It was proved that the two towns are so near that at the time of the birth of the alleged natural daughter Peñuelas was a part of the judicial district of Ponce. Held: That such evidence is insufficient to destroy the presumption of legitimacy, especially as the alleged concubinage between the plaintiff and the alleged natural father was not established as required by section 189 of the Civil Code before its amendment in 1911.

Id.—Id.—In accordance with law and jurisprudence the condition or status of a natural or illegitimate child must be governed by the law in force at the time of its conception or birth, as the case may be.

The facts are stated in the opinion.

*Mr. E. Flores Colón* for the appellant.

*Messrs. J. & M. Tous Soto* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

Carmen Núñez, married to Luis Maldonado, obtained a divorce from him on the 17th of November, 1904. On September 7, 1905, a child, Araceli, was born to her. As this child was born within 301 days from the dissolution of the marriage, it would, as found by the court, be presumed to be legitimate in accordance with section 181 of the Civil Code as follows:

"Sec. 181.—Legitimate children are those born 180 days after the marriage has been celebrated and before 300 days have passed after the marriage has been dissolved.

"Against legitimacy no other proof shall be admitted than the

physical impossibility of the husband to use his wife within the first one hundred and twenty days of the three hundred days that have preceded the birth of the child.''

The complainant Carmen Núñez, however, in representation of her daughter, set up that the latter was the illegitimate child of Luis Becerra Lacot, conceived and born after the divorce. As a particular ground for a claim for her daughter as heir of Luis Becerra the mother sets up a publicly known concubinage; that Luis Becerra and Carmen Núñez lived together publicly, under the same roof, as husband and wife.

After the trial the District Court of Ponce found that Araceli Núñez was the legitimate daughter of the divorced pair, Luis Maldonado and Carmen Núñez, and also found that the complainant had not made out a case as alleged.

The appellee, mother of Becerra, concedes that an illegitimate or even an adulterine child might have a claim on its putative father if born between 1902 and 1911, during which period the Civil Code made no distinction between natural children in particular and illegitimate children in widest term. Appellee, however, points out that under section 184 of the Civil Code only the father may dispute the legitimacy of a child and that, while absence may be set up as showing the physical impossibility of intercourse, no due absence was shown as attempted.

What the appellant sought to show was that during the pendency of the divorce Luis Maldonado and Carmen Núñez lived separately, the husband in Peñuelas and the wife in Ponce. Appellant cites jurisprudence to the effect that each case of alleged physical incapacity, or of absence, must be judged for itself and that definite rules may not be laid down. The commentators quoted were largely speaking of second marriages and of the deposit of the wife and other

conditions that do not exist here. We feel bound to hold that the complainant Carmen Núñez has not successfully rebutted the presumption of legitimacy as set forth in section 181 of the Civil Code.

The appellee truly points out that the living in Peñuelas does not negative the possibility of physical contact. This is not the "absence" of the Civil Code or of the discussions of the commentators. Peñuelas at the time of the conception of Araceli Núñez was part of the jurisdiction of Ponce. Its nearness is revealed by the very witnesses in this case. Carmen was born in Peñuelas. Becerra frequently went there and one of the witnesses lived there. It was incumbent upon appellant to show a physical impossibility of contact.

Of course one may readily understand the attitude of the complainant, assuming her averments to be true. She would then know that Araceli could not be the child of Maldonado and was the child of Becerra and would see an injustice in not permitting the actual facts to be established. Araceli Núñez herself, a girl of sixteen years, on the witness stand said that a person without a name was nobody. She was seeking to prove her true parentage, according to her. Nevertheless, neither the desires of the mother nor the daughter can avail. Society as expressed in the Civil Code has thrown a strong presumption around the legitimacy of children born while the marriage relation exists and for three hundred days thereafter. It is somewhat curious to witness the attempt by the child herself to destroy the presumption of legitimacy, but it is impossible for this court to make exceptions against the letter of the code, to say nothing of its spirit. The appellant failed to show a case within the exception clearly mentioned in the code.

The court also found that the averments of the com-

plaint in regard to concubinage had not been proved. There was some evidence tending to show that Luis Becerra and Carmen Núñez lived together and under the same roof and that he spent a number of whole nights with her, but the testimony is not altogether satisfactory. The evidence, however, is much stronger, in our opinion, that Luis Becerra had his home with his mother during the period of the conception of the child and that he rarely lived or slept away from the house. Certainly no such concubinage was shown as was required by section 189 of the Civil Code before its amendment in 1911, namely:

"Sec. 189.—A father is obliged to recognize his illegitimate child in the following cases:

"1. Where there be an authentic statement in writing made by him expressly recognizing its paternity.

"2. When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance.

"3. When the mother was known to have lived in concubinage with the father during the pregnancy or birth of the child, or when the child was born while his parents were engaged to be married (*relaciones amorosas*)."

According to the law and the jurisprudence of this court, the condition or status of a natural or illegitimate child is to be determined by the law in force at the time of its conception or birth, as the case may be. *Morales* v. *Heirs of Cerame*, 30 P. R. R. 784; *Ramírez et al.* v. *Ramírez et al.*, 30 P. R. R. 574.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.